UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ESTATE OF ROBERT D. HOPPER (DECEASED) BY TIM HOPPER, personal representative,<br><br>      Plaintiff,<br>v.<br><br>PLACER MINING CORPORATION; WILLIAM (BILL) PANGBURN; MATERIAL PROCESSING INCORPORATED; LEROY OLSON, CYNTHIA J. EDIN; LANA SAMMONS; JANE DOE (DAUGHTER); MILA J. HOVER; BUNKER HILL MINING CORPORATION aka AMERICAN ZINC aka LIBERTY SILVER aka JOHN DOES 1–4; VALUE STONE; and HUMMINGBIRD RESOURCES, PLC,<br><br>      Defendants. | Case No. 2:21-cv-00253-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendants Placer Mining Corporation, William (Bill) Pangburn, Material Processing Incorporated, Leroy Olson, Cynthia J. Edin, Lana Sammons, and Mila J. Hover's ("Moving Defendants") Motion to Dismiss. Dkt. 6.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc.

Civ. R. 7.1(d)(1)(B).

Upon review, and for the reasons set forth below, the Court GRANTS the Motion.

## II. BACKGROUND

The Bunker Hill Mine, located in Kellogg, Idaho, is a 6,500 acre mine containing lead, zinc, and silver.[1] The Bunker Hill Mine is part of an EPA Superfund site due to hazardous waste emanating from a lead and zinc smelter located on site in Smelterville, Idaho. The EPA has taken over various aspects of the management of the site, including control of a water treatment plant the EPA uses to process approximately two million gallons of acid mine water a day before safely discharging the cleaned water into the South Fork of the Coeur d'Alene River.

Placer Mining Corporation ("Placer") was incorporated in Nevada on March 9, 1983. Placer currently owns the Bunker Hill Mine. Placer has no places of business outside the State of Idaho. Dkt. 6-1, at 2. Robert "Bob" Hopper helped Placer to raise capital from investors to purchase the mine and related claims in 1991 and resume mining operations. Although not clearly stated,[2] it appears that Hopper, Leroy Olsen, and Bill Pangburn each own twenty-five of the roughly 100 shares[3] of Placer. Materials Processing Inc. (owned by

---

[1] Because this is a Motion to Dismiss, all the facts come from the Complaint (Dkt. 1) unless otherwise referenced. Obviously, the facts may evolve as the adjudicative process continues and should not be considered final.

[2] The Complaint never states that Hopper, Olsen, and Pangburn own shares of Placer. However, the Complaint would not make sense if they did not, so the Court assumes the shares listed in the Complaint are shares of Placer.

[3] The Complaint states that 4 of the 100 shares are disputed, so it is unclear if there are 96 or 100 shares in existence. Dkt. 1, at 6.

Pangburn) owns three shares, Mila Hover owns one, a disputed four shares are held by Cindy K. Edin, and the remaining seventeen shares are held by approximately twelve shareholders.

Upon Hopper's passing in 2011, the EPA placed an open-ended lien in excess of fifty million dollars on Placer and the assets of Plaintiff, Estate of Robert D. Hopper ("the Estate"). Hopper's son, also named Bob Hopper ("Hopper II"), became President, CEO, and Mine Manager of the Bunker Hill Mine sometime after Hopper's death and continued in that position until December 2018. In 2017, with the EPA's approval, Placer leased the Bunker Hill Mine to Liberty Silver for twenty-four months. Liberty Silver was responsible for the care and maintenance of the mine, with an option to purchase it. Liberty Silver later changed its name to Bunker Hill Mining ("Bunker Hill").

In 2018, Hopper II, on the behalf of the Estate, Olsen, Pangburn, and Materials Processing Inc., entered into a Stock Transfer Agreement, in which each of the three major shareholders promised to not sell their shares unless as a block in order to maximize the value of the company in a sale. When Hopper II was fired by Placer in December 2018, communication with Hopper II and the Estate ceased. Placer then renegotiated the lease with Bunker Hill multiple times, resulting in a lower option purchase price, forfeiture of a net smelter royalty, and other various concessions that allegedly cost the Estate several million dollars.

On June 14, 2021, Tim Hopper, as personal representative of the Estate, filed a pro se complaint against the Defendants. Dkt. 1. Moving Defendants filed their Motion to Dismiss on August 12, 2021. Dkt. 6. This Motion was joined by Defendant Bunker Hill

MEMORANDUM DECISION AND ORDER - 3

Mining Corporation aka American Zinc aka Liberty Silver aka John Does 1–4's ("Bunker Hill"). Dkt. 14. As such, this Motion has been joined by all the defendants except Hummingbird Resources PLC and Value Stone, both of whom are incorporated and do business in England.[4]

### III. LEGAL STANDARD

Rule 12(b)(1) provides that an action may be dismissed for lack of subject matter jurisdiction because federal courts have limited jurisdiction. When subject matter jurisdiction is challenged pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of persuasion. *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189,(1936)). A party who brings a Rule 12(b)(1) challenge may do so by referring to the face of the pleadings or by presenting extrinsic evidence. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000) ("Rule 12(b)(1) jurisdictional attacks can be either facial or factual . . .").

If the jurisdictional attack is facial, the challenger asserts that the allegations contained in a complaint are insufficient on their face to establish federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When considering this type of jurisdictional attack, a court must consider the allegations of the complaint to be true and construe them in the light most favorable to the plaintiff. *Love v. United States*,

---

[4] While neither of these parties has appeared before the court, the Court has no record that either of them have been served.

915 F.2d 1242, 1245 (9th Cir. 1988).

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Meyer*, 373 F.3d at 1039. In resolving a factual attack on jurisdiction, the court need not presume the truthfulness of the plaintiff's allegations and may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *Id*.

Here, it appears Moving Defendants are making a facial challenge by contending that the Estate's Complaint does not provide grounds for the Court to have diversity jurisdiction over the case.

## IV. DISCUSSION

### A. Diversity Jurisdiction

For a federal court to exercise subject-matter jurisdiction over a case, that case must involve a federal question under 28 U.S.C. § 1331 or must meet the diversity requirements under 28 U.S.C. § 1332. Diversity jurisdiction requires the action to be between citizens of different states and the amount in controversy must exceed the sum or value of $75,000. *Id*. at § 1332(a). Here, the Estate originally claimed that the Court had diversity jurisdiction over the case. After Moving Defendants filed their Motion to Dismiss alleging that Placer is a resident of the State of Idaho for diversity purposes (thus destroying diversity), the Estate agreed that Placer should be dismissed for lack of subject matter jurisdiction but claimed "all other defendants do have diversity of citizenship" and that the Court could retain the case. Dkt. 19, at 2. Moving Defendants replied that such a course of action was inefficient, if not wholly incorrect. They argued that while the Court may not have

jurisdiction over Placer, Placer is, nonetheless, critical to the claims the Estate brings in this case, and it cannot be left out simply because the Estate wants to preserve jurisdiction. Initially the Court notes its agreement that Placer and Hopper are both residents of the State of Idaho and, as a result, diversity jurisdiction does not exist. Thus, the only question remaining for the Court is whether the Court should dismiss the claims against Placer, or against all the Defendants.

### B. Indispensable Party

The question of whether the entire action should be dismissed is determined by whether Placer is an indispensable party under Rule 19 of the Federal Rules of Civil Procedure. While the Court has the authority to drop a party to maintain its subject-matter jurisdiction over a case, the Court may only do so "provided the nondiverse party is not indispensable to the action under Rule 19." *Sams v. Beech Aircraft Corp.*, 625 F.2d 273, 277 (9th Cir. 1980). *See also Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989) ("it is well settled that Rule 21 [of the Federal Rules of Civil Procedure] invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time").

Rule 19 involves a three-step analysis. *See, e.g., E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1078 (9th Cir. 2010). "First, the court must determine whether a nonparty should be joined under Rule 19(a)." *Id*. In other words, a court must determine if a party is "necessary" to the action. *Confederated Tribes of Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1498 (9th Cir. 1991). If an absentee meets the requirements of Rule 19(a), "the second stage is for the court to determine whether it is feasible to order that the

absentee be joined." *Peabody W. Coal Co.*, 610 F.3d at 1078. Finally, if joinder is not feasible, the court must determine at the third stage whether the case can proceed without the absentee or whether the action must be dismissed. *Id*. A common phrase used to describe this third stage is whether a party is "indispensable." *Confederated Tribes*, 928 F.2d at 1498.[5] A nonparty in whose absence an action must be dismissed is one who "not only [has] an interest in the controversy, but [has] an interest of such a nature that a final decree cannot be made without either affecting that interest or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." *Shields v. Barrow*, 58 U.S. 130, 139 (1855).

Under the first step of the analysis, a party is "required" or "necessary" under Rule 19(a) if:

> (a) in that person's absence, the court cannot accord complete relief among existing parties; or
> (b) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Here, the Estate brings three claims. The first claim is a breach of contract claim involving the Stock Transfer Agreement between Olsen, Pangburn, Materials Processing,

---

[5] Rule 19 no longer refers to "necessary" and "indispensable" parties. Instead, for stylistic purposes only, the rule now refers to "persons required to be joined if feasible" and persons in whose absence, if they cannot be joined, the action should not proceed. *See* Fed. R. Civ. P. 19 advisory comm. nt. (2007). Many courts continue to use the terms "necessary" and "indispensable" and the phrases are used from time to time in this opinion as well.

and the Estate in which the four parties agreed to not sell their shares of Placer unless as a block. The second is an interference with contractual relations claim against "each of the corporate defendants" as they are "aware or should be aware of the existence" of the Stock Transfer Agreement and have consciously disregarded its terms. Dkt. 1, at 8. The third claim is that Placer has breached its fiduciary duty to the Estate and committed corporate waste by renegotiating the lease and option purchase without properly following the corporate bylaws. Aside from significant compensatory damages, the Estate is asking for "an injunction barring the sale of the mine until such time as proper notice to all shareholders can be served in accordance with the corporate Bylaws and a shareholder vote on the terms can be approved or rejected by the shareholders." *Id*. at 9.

Upon review of the facts, the claims, and the relief sought, it is clear that Placer is a necessary party. While the first claim is more related to private parties (Olsen, Pangburn, Materials Processing, and the Estate), the outcome of that claim will have a direct impact on Placer. The second claim is directly against "each of the corporate defendants," including Placer. Dkt. 1, at 8. Finally, control of the mine and management of Placer is at the heart of the third claim. The injunction sought would directly influence Placer's ability to govern its corporate affairs, including its ability to sell the Bunker Hill Mine. As Placer would be the main entity affected by such relief, Placer is clearly a necessary party.

At the second stage, a court must determine whether a party can be joined. Here, both parties have agreed that Placer cannot be joined because it is not a diverse party from the Estate. The Court will accordingly move to the third step.

Third and finally, a court determines whether a party is indispensable or if "whether,

in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 21(b). A court looks at several factors in making such a determination, including "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties," "the extent to which any prejudice could be lessened or avoided," "whether a judgment rendered in the person's absence would be adequate," and "whether the plaintiff would have an adequate remedy if the action were dismissed. . . ." *Id*.

Placer would be significantly prejudiced if the Court issued a judgment that enjoined it without Placer having an opportunity to participate in the proceedings. Indeed, prior courts have held that a party whose interest is affected by an injunction is an indispensable party. *See, e.g.*, *B. Fernandez v. Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 548 (1st Cir. 2006). The Ninth Circuit has also held that it is a "fundamental principle" that "a party to contract is necessary, and if not susceptible to joinder, indispensable to litigation seeking to decimate that contract." *Dawavendewa v. Salt River Project Agr. Imp. And Power Dist.*, 276 F.3d 1150, 1157 (9th Cir. 2002). As the relief requested would involve unwinding several contracts, it is critical that Placer be a part of the proceedings. Given that the Estate's claims all focus on the ownership and management of Placer, there is no way to limit this prejudice. Judgment could not be adequately rendered in Placer's absence. The Estate would have an adequate remedy if the action were dismissed because the action could be brought in state court. In short, Placer is so deeply enmeshed in this case that it cannot be dismissed and the Estate can still seek justice in a different forum. The Court consequently holds that Placer is an indispensable party and that the proceeding cannot

equitably continue in Federal Court without Placer. If the Estate desires to sue Defendants, it should do so in state court.

Accordingly, the Motion to Dismiss (Dkt. 6) is GRANTED and the claims are DISMISSED against ALL DEFENDANTS WITHOUT PREJUDICE.

## V. ORDER

The Court HEREBY ORDERS:

1. The Motion to Dismiss (Dkt. 6) is GRANTED.

2. The Estate of Robert D. Hopper's claims are dismissed against ALL Defendants WITHOUT PREJUDICE.

3. The Court shall enter a judgment concurrently herewith.

DATED: February 8, 2022

David C. Nye
Chief U.S. District Court Judge